**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| IOT INNOVATIONS LLC,<br><br>    *Plaintiff,*<br><br>  v.<br><br>D-LINK CORPORATION,<br><br>    *Defendant.* | Civil Action No. 2:25-cv-01009<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

    Plaintiff IoT Innovations LLC (hereinafter, "IoT Innovations" or "Plaintiff") files this Complaint for Patent Infringement against Defendant D-Link Corporation ("D-Link" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

    1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|  | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,246,173 | Method and Apparatus for Classifying IP Data | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/7246173 |
| 2. | 7,974,266 | Method and Apparatus for Classifying IP Data | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/7974266 |
| 3. | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/7209876 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 7,274,761 | Device Synchronization Over a Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7274761 |
| 5. | 7,394,798 | Push-to Talk Over Ad-Hoc Networks | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7394798 |
| 6. | 7,408,872 | Modulation of Signals for Transmission in Packets via an Air Interface | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7408872 |
| 7. | 7,539,212 | Method and Apparatus for MAC Layer Inverse Multiplexing in a Third Generation Radio Access Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7539212 |
| 8. | 7,593,428 | Apparatus, and Associated Method, for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7593428 |
| 9. | 7,643,423 | Dynamic Channel Allocation in Multiple-Access Communication Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7643423 |
| 10. | 7,974,260 | Method of Transmitting Time-Critical Scheduling Information Between Single Network Devices in a Wireless Network using Slotted Point-to-Point Links | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7974260 |

2.     IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.     IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.     Upon information and belief based on public information, D-Link is a corporation organized and existing under the laws of Taiwan.

5.     Upon information and belief based on public information, D-Link maintains an

established place of business at No. 289, Sinhu 3rd Rd., Neihu District, Taipei City 114, Taiwan.

## JURISDICTION AND VENUE

6.      IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-5 above as though fully set forth in their entirety.

7.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

8.      This Court has personal jurisdiction over D-Link pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) D-Link has done and continues to do business in the United States, including in the State of Texas; (ii) D-Link has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, including making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in the United States and Texas, and/or committing at least a portion of any other infringements alleged herein.

9.      In addition, or in the alternative, this Court has personal jurisdiction over D-Link pursuant to Fed. R. Civ. P. 4(k)(2).

10.     Defendant has previously not challenged this Court's exercise of personal jurisdiction over it.  *See Integral Wireless Technologies LLC v. D-Link Corporation*, 2:25-cv-00388-JRG, Dkt. No. 13, ¶¶ 8-9 (E.D. Tex. Sept. 25, 2025); *see also Crystal Mountain Communications, LLC v. D-Link Corporation*, 4:24-cv-00099-ALM, Dkt. No. 14, ¶ 4 (E.D. Tex. July 12, 2024).

11.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because D-Link does not

reside in any judicial district in the United States.

12.    Defendant has previously not challenged the propriety of venue in this District.  *See Integral Wireless Technologies LLC v. D-Link Corporation*, 2:25-cv-00388-JRG, Dkt. No. 13, ¶ 10 (E.D. Tex. Sept. 25, 2025); *see also Crystal Mountain Communications, LLC v. D-Link Corporation*, 4:24-cv-00099-ALM, Dkt. No. 14, ¶ 5 (E.D. Tex. July 12, 2024).

## THE ACCUSED PRODUCTS

13.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-12 above as though fully set forth in their entirety.

14.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various home security platforms and systems, including, but not limited to, the "Accused Products" set forth and defined below. *See* ¶¶ 17, 31, 43, 53, 63, 81, 94, 105, 116, and 127, *infra*.

15.    On information and belief, Defendant provides assistance to its customers to enable them to use each defined set of Accused Products in an infringing manner as described below.

16.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,246,173

17.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

18.    For purposes of this Count I only, the "Accused Products" include, but are not limited to, D-Link Switches, including the DGS-1210/ME Series, such as the DGS-1210-10P/ME, DGS-1210-28P/ME, DGS-1210-52MP/ME, DGS-1210-10/ME, DGS-1210-28/ME, and DGS-1210-52/ME; the DGS-1250 Series, such as the DGS-1250-28XMP-6KV, DGS-1250-28X-6KV,

DGS-1250-52XMP-6KV, and DGS-1250-52X-6KV; the DGS-1210 Series, such as the DGS-1210-52MP, DGS-1210-52, DGS-1210-28MP, DGS-1210-28, DGS-1210-10P, DGS-1210-28P, DGS-1210-10MP, and DGS-1210-10; the DXS-1210 Series, such as the DXS-1210-12SC, DXS-1210-12TC, DXS-1210-28S, and DXS-1210-28T; the DMS-1250 Series, such as the DMS-1250-10SPL; the DGS-1100V2 Series, such as the DGS-1100-24PV2, DGS-1100-24V2, and DGS-1100-16V2; the DGS-1510 Series, such as the DGS-1510-20, DGS-1510-28P, DGS-1510-28XMP, DGS-1510-28X, and DGS-1510-52XMP; DSS-200G Series; DGS-1520 Series; DIS-200G Series; DMS-1100 Series; DXS-1100 Series; DXS-3610 Series, such as the DXS-3610-54S/SI, and DXS-3610-54T/SI; the DMS-3130 Series, such as the DMS-3130-30TS, and DMS-3130-30PS; the DGS-3630 Series, such as the DGS-3630-52TC/SI, DGS-3630-28SC/SI, DGS-3630-28PC/SI, DGS-3630-52PC/SI, and DGS-3630-28TC/SI; the DGS-3130 Series, such as the DGS-3130-30TS, DGS-3130-30S, DGS-3130-30PS, DGS-3130-54TS, DGS-3130-54S, and DGS-3130-54PS; the DGS-3120 Series, such as the DGS-3120-48PC/SI, DGS-3120-24TC, DGS-3120-48TC, DGS-3120-24PC, and DGS-3120-48PC; the DXS-3400 Series, such as the DXS-3400-24TC, and DXS-3400-24SC; DIS-200G-12S; the DIS-200G Series, such as the DIS-200G-12PS, and DIS-200G-12PSW; the DBS-2000 Series, such as the DBS-2000-52MP, DBS-2000-28P, DBS-2000-10MP, and DBS-2000-28MP; the DGS-1210 Series, such as the DGS-1210-16, DGS-1210-24, DGS-1210-48, DGS-1210-08P, and DGS-1210-24P; the DXS-3600-Series, such as the DXS-3600-32S; Smart Managed Switches, such as the DGS-1210-26; Nuclias Connect Hardware Controllers, such as the DNH-100 and DNH-200; D-Link Network Management Systems, such as the D-View 8; Modem/Gateways, such as the DWM-314-GP, DBG-2000, and DBG-X1000; D-Link Cameras, such as the DCS-8302LH-B1, DCS-8302LH-A1, DCS-8350LH, DCS-8515LH, DCS-8000LHV2, DCS-8325LH, DCS-8627LH,DCS-6500LHV2, DCS-

8300LHV2, DCS-6500LHV2, DCS-2132L, DCS-2230L, DCS-5222L, DCS-825L, DCS-936L, DCS-2530L, and DSH-C310; D-Link Wi-Fi Extenders, such as the DAP-1820-US, DAP-1955, DAP-1755, DAP-1750, DAP-1520, AX1500 Mesh Range Extender (E15), AC1200 WiFi Range Extender (DAP-1610), AX3000 Wi-Fi 6 Mesh Range Extender (E30), DAP-X1860, DAP-1610, DAP-1820-US, DAP-1955, and DAP-1860; D-Link Wi-Fi Access Points, such as the COVR-1100, COVR-1102, COVR-1900, COVR-2200, COVR-2202, C1203-US; Cloud Managed Access Points, such as the DBA-1210P, DBA-2520P, DBA-2820P, DBA-3620P, DBA-3621P, DBA-X2830P, DAP-2610, DAP-2682, DAP-X2810, DAP-X2850, DAP-X3060, DAP-3666, DAP-2020, DAP-3711, DAP-3712, DWL-6620APS, DWL-X8630AP, and DIR-822-US; D-Link Routers, such as the DWR-978, COVR-X1870, COVR-X1860, COVR-X1862, COVR-X1863, COVR-X1864, DIR-X3260, AX6000 Wi-Fi 6 Smart Mesh Router (M60), AX3000 Wi-Fi 6 Smart Mesh Router (M30), EAGLE PRO AI AX1500 Mesh System (M15 1-Pack), EAGLE PRO AI AX1500 Mesh System (M15 2-Pack), EAGLE PRO AI AX1500 Mesh System (M15 3-Pack), DSR-250V2, EAGLE PRO AI AX3200 Mesh System (M32 1-Pack), EAGLE PRO AI AX3200 Mesh System (M32 2-Pack), AX1800 Mesh Router (M18 1-Pack), EAGLE PRO AI AX1500 Smart Router (R15), AX5400 Wi-Fi 6 Router (DIR-X5460), AC1750 MU-MIMO Wi-Fi Gigabit Router (DIR-1750), Smart AC3000 High Power Wi-Fi Tri Band Gigabit Mesh Router (DIR-3040), 5G NR AX3000 Wi-Fi 6 Router (G530), DSR-5000/5000AC DSR-1000/1000AC, N300 4G Smart Router (G403), DIR-X1870, DIR-2680, DIR-1760, DIR-605L, DIR-640L, DIR-869, DIR-885L/R, DIR-890L, DIR-895L, DIR-859, DSR-150N, DSR-250N, DSR-500N), AC3900, COVR-C1213, DAP-1620, DIR-842), DIR-867, DIR-1260, DIR-1360, DIR-1950, DIR-1960, DIR-2640, and DIR-2660; Sensors, such as the DCH-S150; RE Devices, such as the Access Point- DAP-1820; Unmanaged Desktop Switches, such as the DGS-1005G/RE; Access Point- DAP-1610/RE; and

VPN Routers for Business Connectivity, such as the DSR-250V2;  and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

19.     The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

20.     IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce the '173 patent against infringers and to collect damages for all relevant times.

21.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

22.     The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

23.     The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24.     Defendant has directly infringed the claims of the '173 patent by making, using,

selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

25.     For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 13, 14, 25, and 26 of the '173 patent.

26.     As just one example of infringement, the Accused Products perform the method of claim 1, which is a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

27.     As another example of infringement, the Accused Products comprise the router of claim 13 for use in a packet switched network for transmission of Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus, said router comprising: means for receiving said IP data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and means for classifying said IP data at said first node based on an entry in said header.

28.     As yet another example of infringement, the Accused Products comprise the router of claim 25 for use in a packet switched network for transmission of Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus, said router comprising: a receiving device to receive said IP data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and a processor device coupled to said receiving device for receiving said IP data and for classifying said data at said first node based on an entry in said header.

29.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,974,266**

30.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

31.     For purposes of this Count II only, the "Accused Products" include, but are not limited to, D-Link Switches that include the DGS-1210/ME Series, such as the DGS-1210-10P/ME, DGS-1210-28P/ME, DGS-1210-52MP/ME, DGS-1210-10/ME, DGS-1210-28/ME, and DGS-1210-52/ME; the DGS-1250 Series, such as the DGS-1250-28XMP-6KV, DGS-1250-28X-6KV, DGS-1250-52XMP-6KV, and DGS-1250-52X-6KV; the DGS-1210 Series, such as the DGS-1210-52MP, DGS-1210-52, DGS-1210-28MP, DGS-1210-28, DGS-1210-10P, DGS-1210-28P, DGS-1210-10MP, and DGS-1210-10; the DXS-1210 Series, such as the DXS-1210-12SC, DXS-1210-12TC, DXS-1210-28S, and DXS-1210-28T; the DMS-1250 Series, such as the DMS-1250-10SPL; the DGS-1100V2 Series, such as the DGS-1100-24PV2, DGS-1100-24V2,and DGS-1100-16V2; the DGS-1510 Series, such as the DGS-1510-20, DGS-1510-28P, DGS-1510-28XMP, DGS-1510-28X, and DGS-1510-52XMP; the DSS-200G Series; the DGS-1520 Series; the DIS-200G Series; the DMS-1100 Series; the DXS-1100 Series; the DXS-3610 Series, such as the DXS-3610-54S/SI and DXS-3610-54T/SI; the DMS-3130 Series, such as the DMS-3130-30TS and DMS-3130-30PS; the DGS-3630 Series, such as the DGS-3630-52TC/SI, DGS-3630-28SC/SI, DGS-3630-28PC/SI, DGS-3630-52PC/SI, and DGS-3630-28TC/SI; the DGS-3130 Series, such as the DGS-3130-30TS, DGS-3130-30S, DGS-3130-30PS, DGS-3130-54TS, DGS-

3130-54S, and DGS-3130-54PS; the DGS-3120 Series, such as the DGS-3120-48PC/SI, DGS-3120-24TC, DGS-3120-48TC, DGS-3120-24PC, and DGS-3120-48PC; the DXS-3400 Series, such as the DXS-3400-24TC, and DXS-3400-24SC; the DIS-200G-12S; the DIS-200G Series, such as the DIS-200G-12PS and DIS-200G-12PSW; the DBS-2000 Series, such as the DBS-2000-52MP, DBS-2000-28P, DBS-2000-10MP, and DBS-2000-28MP; Smart Managed Switches, such as the DGS-1210-26; the DXS-3600-Series, such as the DXS-3600-32S; the DGS-1210 Series, such as the DGS-1210-16, DGS-1210-24, DGS-1210-48, DGS-1210-08P, and DGS-1210-24P; Nuclias Connect Hardware Controllers, such as the DNH-100 and DNH-200; D-Link Network Management Systems, such as the D-View 8; Modem/Gateways, such as the DBG-2000 and DBG-X1000; D-Link Cameras, such as the DCS-8302LH-B1, DCS-8302LH-A1, DCS-8350LH, DCS-8515LH, DCS-8000LHV2, DCS-8325LH, DCS-8627LH,DCS-6500LHV2, DCS-8300LHV2, DCS-6500LHV2, DCS-2132L, DCS-2230L, DCS-5222L, DCS-825L, DCS-936L, DCS-2530L, and DSH-C310; D-Link Wi-Fi Extenders, such as the DAP-1820-US, DAP-1955, DAP-1755, DAP-1750, and DAP-1520; AX1500 Mesh Range Extenders, such as the E15; AC1200 WiFi Range Extenders, such as the DAP-1610; AX3000 Wi-Fi 6 Mesh Range Extenders, such as the E30; the DAP-X1860; the DAP-1610; the DAP-1820-US; the DAP-1955; the DAP-1860; D-Link Wi-Fi Access Points, such as the COVR-1100, COVR-1102, COVR-1900, COVR-2200, COVR-2202, and C1203-US; Cloud Managed Access Points, such as the DBA-1210P, DBA-2520P, DBA-2820P, DBA-3620P, DBA-3621P, DBA-X2830P, DAP-2610, DAP-2682, DAP-X2810, DAP-X2850, DAP-X3060, DAP-3666, DAP-2020, DAP-3711, DAP-3712, DWL-6620APS, DWL-X8630AP, and DIR-822-US; D-Link Routers, such as the DWR-978, COVR-X1870, COVR-X1860, COVR-X1862, COVR-X1863, COVR-X1864, and DIR-X3260; AX6000 Wi-Fi 6 Smart Mesh Routers such as the M60; AX3000 Wi-Fi 6 Smart Mesh Routers, such as the M30;

EAGLE PRO AI AX1500 Mesh Systems, such as the M15 1-Pack; EAGLE PRO AI AX1500 Mesh Systems, such as the M15 2-Pack; EAGLE PRO AI AX1500 Mesh Systems, such as the M15 3-Pack; DSR-250V2; EAGLE PRO AI AX3200 Mesh Systems, such as the M32 1-Pack; EAGLE PRO AI AX3200 Mesh Systems, such as the M32 2-Pack; AX1800 Mesh Routers, such as the M18 1-Pack; EAGLE PRO AI AX1500 Smart Routers, such as the R15; AX5400 Wi-Fi 6 Routers, such as the DIR-X5460; AC1750 MU-MIMO Wi-Fi Gigabit Routers, such as the DIR-1750; Smart AC3000 High Power Wi-Fi Tri Band Gigabit Mesh Routers, such as the DIR-3040; 5G NR AX3000 Wi-Fi 6 Routers, such as the G530; DSR-5000/5000AC, DSR-1000/1000AC, DIR-X1870, DIR-2680, DIR-1760, DIR-605L, DIR-640L, DIR-869, DIR-885L/R DIR-890L, DIR-895L, DIR-859, DSR-150N, DSR-250N, DSR-500N), AC3900, COVR-C1213, DAP-1620, DIR-842, DIR-867, DIR-1260, DIR-1360, DIR-1950, DIR-1960, DIR-2640, and DIR-2660; Sensors, such as the DCH-S150; RE Devices, such as the Access Point-DAP-1820; Unmanaged Desktop Switches, such as the DGS-1005G/RE; Access Point, such as the DAP-1610/RE; and VPN Routers for Business Connectivity, such as the DSR-250V2; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

32.     The USPTO duly issued U.S. Patent No. 7,974,266 (hereinafter, the "'266 patent") on July 5, 2011, after full and fair examination of Application No. 11/778,822, which was filed on July 17, 2007. *See* '266 patent at p. 1.  A Certificate of Correction was issued on November 22, 2011. *Id.* at p. 11.

33.     IoT Innovations owns all substantial rights, interest, and title in and to the '266 patent, including the sole and exclusive right to prosecute this action and enforce the '266 patent

against infringers and to collect damages for all relevant times.

34.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '266 patent.

35.     The claims of the '266 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of data transmission in a packet switch network.

36.     The written description of the '266 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.     Defendant has directly infringed the claims of the '266 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

38.     Defendant has directly infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claims 1, 2, 5, 16, 17, and 20 of the '266 patent.

39.     As just one example, Defendant, using the Accused Products and associated hardware and software and functionalities, performs the method of claim 1, which is a method of classifying data comprising: receiving Internet Protocol (IP) data at a first node; classifying the IP data received at the first node based on a last destination address entry of a plurality of destination address entries in a header of the IP data; and forwarding the IP data from the first node to a second

node, wherein the IP data is classified at the second node based on the last destination address entry of the plurality of destination address entries in the header of the IP data.

40.    As another example of infringement, Defendant's Accused Products comprise the router of claim 16, comprising: a receiver configured to receive Internet Protocol (IP) data at the router; a processing device configured to classify the IP data at the router based on a last destination address entry of a plurality of destination address entries in a header of the IP data; and a forwarding device configured to forward the IP data from the router to a node, wherein the IP data is classified at the node based on the last destination address entry of the plurality of destination address entries in the header of the IP data.

41.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,209,876

42.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

43.    For purposes of this Count III only, the "Accused Products" include, but are not limited to, D-Link websites, such as the  D-Link Shop, D-Link, and D-link Support; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

44.      The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007 after full and fair examination of Application No. 10/293,743 which was filed on November 13, 2002.  *See* '876 patent at p.1.

45.      IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

46.      IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

47.      The written description of the '876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.      Defendant has directly infringed and continue to directly infringe the claims of the '876 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

49.      For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 13, 14, 15, and 16 of the '876 patent.

50.      As just one example of infringement, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs the method of claim 13, which is a method for producing answers to a question or query, executable in a computer system, comprising the steps of: (a) receiving a search question or query comprising data indicative of a

subject to be searched; (b) initiating a key words and/or phrases search of an information repository for data containing terms present in said search question or query, and receiving a first data set comprising data from said information repository containing terms present in said search question or query; (c) retrieving answer phrases from said first data set having a syntactic form matching an expected answer to said search question or query; and (d) providing output in the form of one or more of said answer phrases.

51.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,274,761

52.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

53.     For purposes of this Count IV only, the "Accused Products" are devices, including but not limited to, Connected Home Hubs, such as the mydlink Connected Home Hub (DCH-G022); Staples Connect Hubs powered by D-Link (DCH-G021); Connected Home Hubs (DCH-G020); Connected Home Hubs (DCH-G020X); Gateways, such as the 5G NR Enhanced Gateway (DWR-2010); Smart Home Security Kits, such as the DCH-107KT; Sensors, such as the mydlink Z-Wave Door/Window Sensor (DCH-Z112), mydlink Z-Wave Motion Sensor (DCH-Z122), Z-Wave Smoke Alarm (DCH-Z310), Z-Wave Siren (DCH-Z510), Door & Window Sensor (DCH-Z110), and Door & Window Sensor (Z120); and Wi-Fi Battery Cameras, such as the DCS-2800LH; and all of the prior models, iterations, releases, versions, generations, and prototypes of

the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

54.     The USPTO duly issued U.S. Patent No. 7,274,761 (hereinafter, the "'761 patent") on September 25, 2007 after full and fair examination of Application No. 09/885,130 which was filed on June 21, 2001.  *See* '761 patent at p.1.

55.     IoT Innovations owns all substantial rights, interest, and title in and to the '761 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

56.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '761 patent.

57.     The written description of the '761 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

58.     Defendant has directly infringed and continues to directly infringe the claims of the '761 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

59.     For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 3, and 5 of the '761 patent.

60.     As just one example of infringement, Defendant, provides and/or instructs its customers to provide, the Accused Products and their associated hardware and software and

functionalities, which comprise the device of claim 1, which is a device comprising a controller for reading a real time clock at an identified instance of a common time reference having distinguishable instances, wherein the device is arranged to synchronise to the common time reference; and a transmitter for transmitting, in a network comprising the device and at least one receiver, an identification of the real time clock value for a first instance and an identification of the first instance.

61.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.   Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,394,798**

62.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

63.    For purposes of this Count V only, the "Accused Products" are devices, including, but not limited to, Connected Home Hubs, such as the mydlink Connected Home Hub (DCH-G022); Staples Connect Hubs powered by D-Link (DCH-G021); Connected Home Hubs (DCH-G020); Connected Home Hubs (DCH-G020X); Gateways, such as the 5G NR Enhanced Gateway (DWR-2010); Smart Home Security Kits, such as the DCH-107KT; Sensors, such as the mydlink Z-Wave Door/Window Sensor (DCH-Z112), mydlink Z-Wave Motion Sensor (DCH-Z122), Z-Wave Smoke Alarm (DCH-Z310), Z-Wave Siren (DCH-Z510), Door & Window Sensor (DCH-Z110), and Door & Window Sensor (Z120); and Wi-Fi Battery Cameras, such as the DCS-2800LH; and all of the prior models, iterations, releases, versions, generations, and prototypes of

the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

64.    The USPTO duly issued U.S. Patent No. 7,394,798 (hereinafter, the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694 which was filed on October 13, 2004.  *See* '798 patent p.1.

65.    IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

66.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

67.    The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.    Defendant has directly infringed and continues to directly infringe the claims of the '798 patent by making, using, selling, offering to sell, importing, and/or conducting internal and external testing of one or more of the Accused Products.

69.    For example, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 5, 13, 16, 17, 19, and 27 of the '798 patent.

70.     As just one example of infringement, Defendant's Accused Products comprise the network system of claim 1, which comprises a plurality of network nodes, wherein: a first plurality of network nodes comprise means for temporarily forming a first group with the first plurality of network nodes in communication with each other using sending means for sending information to the first group and receiving means for receiving information from the first group; and a second plurality of network nodes comprise means for temporarily forming a second group with the second plurality of network nodes in communication with each other using sending means for sending information to the second group and receiving means for receiving information from the second group; wherein a first network node is included in the first plurality of network nodes and the second plurality of network nodes and configured to provide communication between the first group and the second group; wherein the sending means and the receiving means are configured to provide a direct contact via a radio connection between at least two network nodes of the first group and the second group.

71.     As another example of infringement, Defendant, using the Accused Products and its associated hardware and software and functionalities, performs the method of claim 16, which is a method for controlling network system comprising: temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group.

72.    Defendant has had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

73.    Since gaining knowledge of the '798 patent, Defendant has also indirectly infringed one or more claims of the '798 patent by inducing others to directly infringe said claims.    Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '798 patent by providing or requiring use of the Accused Products.    Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claims 1, 5, 13, 16, 17, 19, and 27 of the '798 patent.    Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.    Defendant has performed these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement.    Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '798 patent.

74.    Defendant has also indirectly infringed by contributing to the infringement of the '798 patent.    Defendant has contributed to the direct infringement of the '798 patent by its personnel, contractors, distributors, and customers.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringed one or more claims of the '798 patent, including, for example, claims 1,

5, 13, 16, 17, 19, and 27 of the '798 patent.  The special features constitute a material part of the invention of one or more of the claims of the '798 patent and were not staple articles of commerce suitable for substantial non-infringing use.

75.     Since gaining knowledge of the '798 patent, Defendant's direct infringement of one or more claims of the '798 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

76.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

77.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

78.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '798 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

79.      IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,408,872**

80.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

81.    For purposes of this Count VI only, the "Accused Products" include, but are not limited to provide D-Link devices, including but not limited to, AX3000 Wi-Fi 6 PCIe Adapters with Bluetooth 5.1 (DWA-X3000), DWA-X582; DCH-G601W; DCS-8635LH; DCS-8526LH; 2K QHD Outdoor Wi-Fi Cameras (DCS-8620LH), M18 AX1800 Wi-Fi 6 AI Routers, R32 AX3200 Smart Routers; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

82.    The USPTO duly issued U.S. Patent No. 7,408,872 (hereinafter, the "'872 patent") on August 5, 2008, after full and fair examination of Application No. 10/483,367, which was filed on July 9, 2001.  *See* '872 patent at p.1.

83.    IoT Innovations owns all substantial rights, interest, and title in and to the '872 patent, including the sole and exclusive right to prosecute this action and enforce the '872 patent against infringers and to collect damages for all relevant times.

84.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '872 patent.

85.    The written description of the '872 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

86.     Defendant has directly infringed and continues to directly infringe the claims of the '872 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of one or more of the Accused Products.

87.     For example, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 3, 12, 21, and 22 of the '872 patent.

88.     As just one example of infringement, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs the method of claim 1, which is a method for modulating signals, wherein signals are to be transmitted by a device in packets via an air interface, the method comprising: receiving a first plurality of bits and a second plurality of bits, creating a pair of bits by adding a set bit to a first bit of said first plurality of bits, wherein one of said set bit and said first bit of said first plurality of bits has a fixed value, and mapping one of a first set of values to said pair of bits according to a selected modulation scheme and mapping a second set of values to said second plurality of bits according to said selected modulation scheme.

89.     As an additional example of infringement, Defendant's Accused Products comprise the modulator of claim 12, which is a modulator for modulating signals that are to be transmitted by a device in packets via an air interface the modulator comprising: modulating means for mapping a first set of values to pairs of bits according to a selected modulation scheme, wherein a first plurality of bits comprises said pairs of bits and wherein at least one of said bits of said pair of bits has a fixed value wherein the modulating means comprise means to further map a second set of values to a second plurality of bits according to said modulation scheme.

90.     As another example of infringement, Defendant's Accused Products comprise the device of claim 21, which is a device suited for establishing a wireless connection to at least one other device and comprising: a modulator comprising modulating means for mapping a first set of values to pairs of bits according to a selected modulation scheme, wherein a first plurality of bits comprises said pairs of bits and wherein at least one of said bits of said pair of bits has a fixed value, and further wherein the modulating means comprises means for mapping a second set of values to a second plurality of bits according to said selected modulation scheme; and transmitting means for transmitting signals modulated by said modulator by an air interface.

91.     As yet another example of infringement, Defendant's Accused Products comprise the communications system of claim 22, which is a communications system in which signals are transmitted via an air interface, characterized by at least one device comprising: a modulator comprising modulating means for mapping a first set of values to pairs of bits according to a selected modulation scheme, wherein a first plurality of bits comprises said pairs of bits and wherein at least one of said bits of said pair of bits has a fixed value, and further wherein the modulating means comprises means for mapping a second set of values to a second plurality of bits according to said selected modulation scheme; and transmitting means for transmitting signals modulated by said modulator via an air interface.

92.      IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,539,212**

93.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

94.     For purposes of this Count VII, the "Accused Products" include, but are not limited to, Connected Home Hubs such as mydlink Connected Home Hub (DCH-G022); Connected Home Hubs (DCH-G020); Connected Home Hubs (DCH-G020X); Gateways, such as the 5G NR Enhanced Gateway (DWR-2010); and Wi-Fi Battery Cameras, such as the DCS-2800LH; all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products") using Z-Wave technology.

95.     The USPTO duly issued U.S. Patent No. 7,539,212 (hereinafter, the "'212 patent") on May 26, 2009, after full and fair examination of Application No. 10/300,668, which was filed on November 19, 2002. *See* '212 patent, at p. 1.

96.     IoT Innovations owns all substantial rights, interest, and title in and to the '212 patent, including the sole and exclusive right to prosecute this action and enforce the '212 patent against infringers and to collect damages for all relevant times.

97.     The claims of the '212 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of multiplexing in a wireless network.

98.     The written description of the '212 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

99.    Defendant has directly infringed and continues to infringe one or more claims of the '212 patent by using, providing, supplying, or distributing the Accused Products.

100.    Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 14 of the '212 patent.

101.    As one example of infringement, Defendant uses the Accused products to perform a the method of claim 14, which is a method, comprising receiving a radio link control data flow at a first rate from a core network for communication to a user equipment; preparing a plurality of media access control data flows, at a media access sublayer, each of a lower rate than said first rate, so as to convey the radio link control data flow to the user equipment; including with the plurality of media access control data flows information indicating how the media access control data flows are to be combined by the user equipment into the radio link control data flow; and providing the plurality of media access control data flows for communication to the user equipment.

102.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '212 patent.

103.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,593,428**

104.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

105.    For purposes of this Count VIII only, the "Accused Products" include, but are not limited to, EAGLE PRO AI AX1500 Mesh Systems, such as the M15 1-Pack; EAGLE PRO AI AX1500 Mesh Systems, such as the M15 2-Pack; EAGLE PRO AI AX1500 Mesh Systems, such as the M15 3-Pack; EAGLE PRO AI AX3200 Mesh Systems, such as the M32 1-Pack; EAGLE PRO AI AX3200 Mesh Systems, such as the M32 2-Pack; EAGLE PRO AI AX1500 Smart Routers, such as the R15; AX5400 Wi-Fi 6 Routers, such as the DIR-X5460; AC1750 MU-MIMO Wi-Fi Gigabit Routers, such as the DIR-1750; Smart AC3000 High Power Wi-Fi Tri Band Gigabit Mesh Routers, such as the DIR-3040; AX1500 Mesh Range Extenders, such as the E15; AC1200 WiFi Range Extenders, such as the DAP-1610; Compact-Full-HD-Wi-Fi-Cameras, such as the DCS-6100LHV2; 2K QHD Indoor Wi-Fi Cameras, such as the DCS-8350LH; Compact Full HD Wi-Fi Cameras, such as the DCS-6100LH; AX3000 Wi-Fi 6 PCle Adapters with Bluetooth 5.1, such as the DWA-X3000; Wireless AC1200 Dual Band PCI Express Adapters, such as the DWA-582; VR Air Bridges, such as the DWA-F18; Whole Home Smart Wi-Fi Water Leak Sensor Kits, such as the DCH-S1621KT; Cloud Managed Access Points, such as the DBA-1210P, DBA-2520P, DBA-3620P, DBA-3621P, DBA-X1230P, DBA-X2830P, DAP-2610, DAP-2682, DAP-X2810, DAP-X2850, DAP-X3060, DAP-2662, DAP-3666, DIS-2650AP, and DIS-3650AP; Routers, such as the DWR-978 and DSR-1000AC; Access Points, such as the DAP-2020, DAP-3711, DAP-3712, DWL-6610AP/APE, DWL-6620APS, DWL-8620AP/APE, DWL-8720AP, DWL-X8630AP, and DAP-1360; Smart AI Cameras, such as the DCS-8635LH, DCS-8000LHV3, and DCS-8300LHV2; DWA-121; Wireless-N Nano USB Adapters, such as the DWA-131; AC1300 MU-MIMO Wi-Fi Nano USB Adapters, such as the DWA-181; Wireless N High-Gain USB

Adapters, such as the DWA-137; Wireless AC Dual Band USB Adapters, such as the DWA-171;

Wireless AC600 Dual Band USB Adapters with External Detachable Antennas, such as the DWA-

172; DWA-182; AX1500 4G Smart Routers, such as the G415; AX1500 4G CAT6 Smart Routers,

such as the G416; EAGLE PRO AI AX3200 Smart Routers, such as the R32; 4G LTE M2M

Routers, such as the DWM-313; 4G LTE Mobile WiFi Hotspots 150 Mbps, such as the DWR-932;

5G Wi-Fi 6 Mobile Hotspots, such as the DWR-2101; D-Link WiFi Routers AX1800 WiFi 6, such

as the DIR-X1870; DCS-6500LHV2; Tri Band Whole Home Wi-Fi Systems, such as the COVR-

2202-US; AC1200 Dual Band Whole Home Wi-Fi Systems, such as the COVR-C1203-US;

Wireless AC1200 Dual Band Routers with High-Gain Antennas, such as the DIR-822-US; D-Fend

AC2600 Wi-Fi Routers, such as the DIR-2680; Wi-Fi AC750 Dual Band Range Extenders, such

as the DAP-1520; AirPremier® N Dual Band, PoE Access Points powered by CloudCommand™,

such as the DAP- 2555; AirPremier® N Dual Band Exterior PoE Access Points, such as the DAP-

3520; Cloud Cameras 2200, such as the DCS-2132L; Full HD Wi-Fi Cameras, such as the DCS-

2230L; HD Pan; Tilt & Zoom Wi-Fi Cameras, such as the DCS-5025L; Pan & Tilt Day/Night

Network Cameras, such as the DCS-5020L; D-Link Cloud Cameras 5000 Pan/Tilt HD Day &

Night Network Cameras, such as the DCS-5222L; Wi-Fi Baby Monitors, such as the DCS-800L;

Wi-Fi Baby Monitors, such as the DCS-820L; Wi-Fi Baby Cameras, such as the DCS-825L;

Wireless N Day/Night Home Network Cameras, such as the DCS-932L; HD WI-FI CAMERAS,

such as the DCS-936L; HD 180-DEGREE WI-FI CAMERAs, such as the DCS-960; Cloud

Routers, such as the DIR-605L; Wireless VPN SOHO Routers, such as the DIR-640L; AC1750

Wi-Fi Routers, such as the DIR-869; AC1900 Wi-Fi Routers, such as the DIR-879; AC3150 Ultra

Wi-Fi Routers, such as the DIR-885L/R; Wireless AC3200 Ultra Wi-Fi Routers, such as the DIR-

890L; AC5300 Ultra Wi-Fi Routers, such as the DIR-895L; AC2600 WI-FI RANGE

EXTENDERS, such as the DAP-1860; AC2000 Wi-Fi Range Extenders, such as the DAP-1820; AirPremier N Dual Band PoE Access Points with Plenum-rated Chassis, such as the DAP-2590; Air Premier® N Dual Band Exterior PoE Access Points powered by CloudCommand™, such as the DAP-3525; AirPremier® N Dual Band Outdoor PoE Access Points, such as the DAP-3690; Wi-Fi MOTION SENSORS, such as the DCH-S150; mydlink® Wi-Fi Water Sensors, such as the DCH-S160; mydlink® Wi-Fi Sirens, such as the DCH-S220; FULL HD 180-DEGREE WI-FI CAMERAS, such as the DCS-2530L; FULL HD 180-DEGREE WI-FI CAMERAS, such as the DCS-2360L; DCS-2630L; HD 180-DEGREE WI-FI CAMERAS, such as the DCS-8200LH; Cloud Cameras 1150, such as the DCS-933L; HD WI-FI CAMERAS, such as the DCS-935L; AC1750 WI-FI ROUTERS, such as the DIR-859; Wi-Fi SMART PLUGS, such as the DSP-W215; DSP-W118; Unified Services Routers, such as the DSR-150N, DSR-250N, and DSR-500N; AC3900 Whole Home Wi-Fi Systems, such as the COVR-3902-US; Dual Band Whole Home Wi-Fi Systems, such as the COVR-C1213; Hybrid Whole Home Powerline Wi-Fi Systems, such as the COVR-P2502; Tri Band Whole Home Mesh Wi-Fi Systems, such as the COVR-R2203; AC1200 Wi-Fi Range Extenders, such as the DAP-1620; AC1300 Wi-Fi Range Extenders, such as the DAP-1620; HD PAN & TILT WI-FI CAMERAS, such as the DCS-5030L; Mini HD Wi-Fi Cameras, such as the DCS-8000LH/2PK; AC1200 MU-MIMO Wi-Fi Gigabit Routers, such as the DIR-842; AC1750 MU-MIMO Wi-Fi Routers, such as the DIR-867; AC1900 MU-MIMO Wi-Fi Routers, such as the DIR-878;  AC2600 MU-MIMO Wi-Fi Routers, such as the (DIR-882; OMNA™ 180 CAM HD, such as the DSH-C310: Wi-Fi SMART PLUGS, such as the DSP-W110; Wireless AC1200 Concurrent Dual Band Gigabit PoE Access Points, such as the DAP-2660; AC1200 Wi-Fi Gigabit Routers, such as the DIR-1260; AC1300 Smart Mesh Wi-Fi Routers, such as the DIR-1360; DAP-X1870; DAP-1750; DAP-1755; DAP-1955; DAP-1950; DAP-X1860;

DAP-1530; DRA-2060; AC1900 MU-MIMO Wi-Fi Gigabit Routers, such as the DIR-1950; AC1900 Smart Mesh Wi-Fi Routers, such as the DIR-1960; AC2600 High-Power Wi-Fi Routers, such as the (DIR-2640; AC2600 Smart Mesh Wi-Fi Routers, such as the DIR-2660; AX1500 Mesh Wi-Fi 6 Routers, such as the DIR-X1550; Dual-Band 802.11n Unified Wireless Access Points, such as the DWL-6700AP; AX1800 Wi-Fi 6 USB Adapter Wi-Fi 6 AX1800 USB 3.0 Dongles, such as the AX18U; DWA-T185; Wireless AX3000 Dual-Band PCI Express Adapters, such as the WAX582A1; 802.11ac Wireless USB Adapters, such as the DWA-192; Cameras, such as the DCS-8302LH-B1, DCS-8302LH-A1, DCS-8620LH, DCS-8515LH, DCS-8000LHV2, DCS-8325LH, DCS-6500LH, DCS-8330LH, DCS-8630LH, DCS-8627LH, DCS-8301LH, and DCS-8526LHA1; Wireless AC1200 Wave 2 Dual-Band wall-plate PoE APs, such as the DAP-2620; DBA-2720P; DAP-2720; DBA-1520P; DAP-2622; DWL-6720AP; DNH-100; DNH-200; 4G LTE Routers, such as the DWR-M921; DIR-3060; DIR-1760; DWR-932C; Wireless N300 4G LTE Routers, such as the DWR-920V; U.S. Cellular Home Phones, such as the DWR-920V; DIR-X6060; DIR-X1860; DIR-2150; DIR-X3260; AC1200 Smart Routers, such as the R12; Wireless N300 Routers, such as the DIR-615; AX1500 Wi-Fi 6 Routers, such as the DIR-X1560; N300 Wi-Fi AI Routers, such as the R04; N300 Wi-Fi AI Routers, such as the R03; COVR-1100; COVR-1102; COVR-1103; COVR-X1860; COVR-X1862; COVR-X1863; COVR-X1864; COVR-1900; COVR-L1900; DIR-853; DSR-1000; DSR-500; DSR-500R; DBG-800; DBG-X1000; DAP-X1870; DAP-1750; DAP-1755; DAP-1955; DAP-1950; DAP-1530; DAP-X1860; Sensors, including Wi-Fi Water Leak Sensor Starter Kits, such as the SW-A11KT; Remote Water Leak Sensing Pods, such as the SW-A2; AC Powered Wi-Fi Water Leak Sensors, such as the DCH-S162 A1; Wi-Fi SMART PLUGS, such as the DSP-W320; Refurbished products, including D-Link [Certified Refurbished] WiFi5 AC1200 Extenders, such as the DAP-1610/RE; D-Link

[Certified Refurbished] WiFi Range Extenders; AC2000 Dual Bands for Smart Home, such as the DAP-1820/RE; D-Link [Certified Refurbished] Full HD Pan & Tilt Wi-Fi Cameras with 360 Degree View, 1080p, Flexible Recording, and Night Vision, such as the DCS-6500LHV2/RE; D-Link [Certified Refurbished] 2K QHD Indoor WiFi Cameras mydlink Night Vision, Sound Detection, such as the DCS-8350LH/RE; D-Link [Certified Refurbished] Compact Full HD Pro Wi-Fi Cameras with 1080p, Sound/Motion Detection, Flexible Recording, and Night Vision, such as the DCS-6100LHV2/RE; D-Link [Certified Refurbished] Water Leak Sensor Kits, such as the DCH-S1621KT/RE; D-Link [Certified Refurbished] mydlink Wi-Fi Water Sensors, such as the DCH-S161-US/RE; Bluetooth cards, such as the Intel WiFi 6 AX200 AX200NGW; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

106.    The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

107.    IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

108.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

109.    The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components and functionalities that improve electronic communications by providing a for the detection and discarding of corrupted data in a data packet using additional checksums.

110.     The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

111.     Defendant has directly infringed the claims of the '428 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

112.     For example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 14, 15, and 16 of the '428 patent.

113.     As just one example, Defendant, using the Accused Products and its associated hardware and software and functionalities, performs the method of claim 14, which is a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

114.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 7,643,423

115.     IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

116.     For purposes of this Count IX only, the "Accused Products" include, but are not limited to, AX3000 Wi-Fi 6 PCIe Adapters with Bluetooth 5.1, such as the DWA-X3000; DWA-X582; DCH-G601W; DCS-8635LH; 2K QHD Outdoor Wi-Fi Cameras, such as the DCS-8620LH; M18 AX1800 Wi-Fi 6 AI Routers; R32 AX3200 Smart Routers; DIR-X6060; D-Links; 2K Outdoor Wi-Fi Cameras, such as the DCS-8302LH (A1, B1); HD Pan & Tilt Wi-Fi Cameras, such as the DCS-8515LH; DCS-8325LH; DCS-8330LH; DCS-8000LHV2; DCS-8301LH; U.S. Cellular Home Phones; Wireless N300 4G LTE Routers, such as the DWR-920V; DCS-8350LH; DCS-8627LH; DCS-8630LH; D-Link [Certified Refurbished] Water Leak Sensor Kits, such as the DCH-S1621KT/RE; DAP-1755; DAP-1750; DAP-1950; DAP-1955; COVR-1900; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

117.     The USPTO duly issued U.S. Patent No. 7,643,423 (hereinafter, the "'423 patent") on January 5, 2010, after full and fair examination of Application No. 11/507,789, which was filed on August 21, 2006.  *See* '423 patent, at p. 1.

118.     IoT Innovations owns all substantial rights, interest, and title in and to the '423 patent,

including the sole and exclusive right to prosecute this action and enforce the '423 patent against infringers and to collect damages for all relevant times.

119.    The claims of the '423 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of two-way communication systems by reducing interference.

120.    The written description of the '423 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

121.    Defendant has directly infringed one or more claims of the '423 patent by using, providing, supplying, or distributing the Accused Products.

122.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 9, and 10 of the '423 patent.

123.    As one example of infringement, Defendant uses the Accused Products to perform a the method of claim 1, which is a method comprising transmitting, via a downlink channel, a frame to two or more communication units, a first portion of the frame including reservation set information and a second portion of the frame including allocation set information, wherein the allocation set information indicates a dynamically determined set of uplink channels that constitute an allocation set, and wherein the reservation set information indicates particular channels of the allocation set that are reserved for each of the two or more communication units; receiving uplink communications from at least one of the two or more communications units via the

communications channels reserved thereto as indicated by the reservation set.

124.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '423 patent.

125.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT X: INFRINGEMENT OF U.S. PATENT NO. 7,974,260

126.    IoT Innovations repeats and re-alleges the allegations in Paragraphs 1-16 above as though fully set forth in their entirety.

127.    For purposes of this Count X only, the "Accused Products" include, but are not limited to, AX3000 Wi-Fi 6 PCIe Adapters with Bluetooth 5.1, such as the DWA-X3000; DWA-X582; AX900 Wi-Fi 6 USB Adapters, such as the AX9U; DCH-G601W; DCS-8635LH; DCS-8526LH; Wi-Fi Smart Plugs, such as the PM-01M; 2K QHD Outdoor Wi-Fi Cameras, such as the DCS-8620LH; M18 AX1800 Wi-Fi 6 AI Routers; R32 AX3200 Smart Routers; D-Link AQUILA PRO AI AX3000 Wi-Fi 6 Smart Mesh Routers with Wi-Fi 6 USB Adapter, such as the MBUND30-1; D-Link Add-on Remote Battery-Powered Water Leak Sensing Pods, such as the SW-A2; DIR-X6060; D-Link Expandable Smart Wi-Fi Water Leak Sensor Starter Kits, such as the SW-A11KT; 2K Outdoor Wi-Fi Cameras, such as the DCS-8302LH (A1, B1); HD Pan & Tilt Wi-Fi Cameras, such as the DCS-8515LH; DCS-8325LH; DCS-8330LH; DCS-8000LHV2; DCS-8301LH; U.S. Cellular Home Phones; Wireless N300 4G LTE Routers, such as the DWR-920V; AX3000 Wi-Fi 6 Smart Mesh Routers, such as the M30; D-Link AQUILA PRO AI AX3000 Smart WiFi 6 Mesh

Router System 2-Packs, such as the M30/2; the D-Link AQUILA PRO AI AX3000 Smart WiFi 6 Mesh Router System 3-Packs, such as the M30/3; DCS-8350LH; DCS-8627LH; DCS-8630LH; D-Link [Certified Refurbished] Water Leak Sensor Kit, such as the DCH-S1621KT/RE; DAP-1755; DAP-1750; DAP-1950; DAP-1955; COVR-1900; and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications, and as to the foregoing, whether new or refurbished (collectively, the "Accused Products").

128.    The USPTO duly issued U.S. Patent No. 7,974,260 (hereinafter, the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269. *See* '260 patent at 1. A Certificate of Correction was issued on November 29, 2011. *See id.* at 17.

129.    IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

130.    The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of timing controls among devices in a wireless network setting.

131.    The written description of the '260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

132.    Defendant has directly infringed and continues to directly infringe one or more claims

of the '260 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

133.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 5, and 14 of the '260 patent.

134.    As one example of infringement, the Accused Products include the device of claim 1, which is a device comprising: a processor; a non-transitory computer-readable medium including computer-executable instructions stored thereon that, if executed by the processor, cause the processor to: define a data sequence, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and an antenna configured to transmit the defined data sequence in a data communication packet to the second device in a time defined contact slot.

135.    As another example of infringement, Defendant uses the Accused Products to perform the method of claim 5, which is a method of transmitting timing control information from a first device to a second device in a communication network, the method comprising: defining a data sequence at a first device, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device,

and wherein the first active member address and a second active member address are assigned to the second device; and transmitting the defined data sequence in a data communication packet from the first device ot the second device in a time defined contact slot.

136.    As another example of infringement, Defendant's Accused Products comprise the non-transitory computer-readable medium of claim 14, which is a non-transitory computer-readable medium having computer-executable instructions stored thereon that, if executed by a processor, cause a computing device to: define a data sequence, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for transmitting packets in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and transmit the defined data sequence in a data communication packet to the second device in a time defined contact slot.

137.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

138.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### JURY DEMAND

139.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

140.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '798 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendant account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '798 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>October 3, 2025</u>                    Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1001 Bannock Street, Suite 241
Denver, CO 80204
Telephone: (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff IoT INNOVATIONS LLC*

* Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet
- Proposed Summons